# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES O. CLINTON, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-17-2063 |
| DAVID R. BLOOMBURG[1] and JASPER CLAY, | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

Plaintiff Charles O. Clinton filed this civil rights action against Defendants David Blumberg and Jasper Clay, Commissioners of the Maryland Parole Commission, alleging various claims concerning Clinton's 2015 supervised release revocation proceedings. ECF No. 1. Specifically, he claims that the recordings of his hearing were destroyed; Clay violated his rights by ordering a continuance and mini-trial, which delayed the hearing; Blumberg failed to intervene following Clinton's letters and emails complaining about Clay; and he was not provided with a new mandatory release date. *Id.* Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 13. The parties fully briefed the motion. ECF Nos. 13-1, 16, 17. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2016). Because Clinton fails to state a claim against Defendants with regard to the destruction of the recordings of his hearing and the undisputed evidence shows that statute of limitations has run on his other claims, Defendants' dispositive Motion, construed as a Motion for Summary Judgment, is GRANTED.

---

[1] The Clerk is directed to amend the docket to reflect that the correct spelling of this Defendant's last name is Blumberg.

## BACKGROUND

In 2004, Clinton was sentenced in Maryland state court to a term of 20 years' imprisonment, with 8 years suspended. ECF No. 13-34. Clinton's maximum expiration date, or the date his term of imprisonment was due to expire, was December 31, 2015. ECF No. 13-4. However, after applying his 1,297 diminution credits, Clinton was released on mandatory supervision on June 12, 2012. *Id.*; *see* Md. Code Ann., Corr. Servs. § 7-501(a).

On August 23, 2012, Clinton was arrested in Montgomery County, Maryland and charged with theft and attempted theft. ECF No. 13-5. On August 31, 2012, Clinton was arrested in Prince George's County, Maryland and charged with indecent exposure and possession of marijuana. Compl. 3; Request for Warrant, ECF No. 13-7. On September 5, 2012, the Maryland Parole Commission issued a retake warrant for Clinton based on these charges. ECF No. 13-8 (charging that Clinton violated his conditions of supervision by failing to obey all laws and by possessing a controlled dangerous substance).

On October 26, 2012, Clinton appeared in the Circuit Court for Prince George's County, where he entered a plea of nolo contendere to the marijuana possession charge and was sentenced to one day of imprisonment. Ruling, ECF No. 13-10; *see also* Compl. 3. The indecent exposure charge was merged with the marijuana charge. Ruling. Clinton's theft charges were nolle prossed in Montgomery County on March 4, 2013. *See* Supp. Rept. 1, ECF No. 13-13; *see also* Compl. 3.[2]

---

[2] Although Plaintiff's Complaint and the record include minor discrepancies in some of the dates, none of the differences is material to resolving this action. *Compare* Supp. Rept. 3 (stating that the arrest occurred on August 30, 2012), *with* Request for Warrant (stating the date as August 31, 2012); *compare* Ruling (stating that plea was entered on Oct. 26, 2012), *with* Compl. 3 (claiming that plea was entered on October 18, 2012); *compare* Supp. Rept. 1 (stating that nolle pross dismissal occurred on March 4, 2013), *with* Compl. 3 (claiming that the nolle pross dismissal occurred on February 28, 2013). I refer to the date of arrest as August 31, 2012.

2

On March 5, 2013, Clinton was taken back into the custody of the Department of Corrections (DOC). Inmate Traffic History 2, ECF No. 13-36; Sentence Calculation Worksheet, ECF No. 13-38. On March 18, Clinton admitted that he had violated the terms of his supervised release as charged in the retake warrant, waived a preliminary hearing on the charges, waived his right to counsel, and indicated that he wished "to be heard with respect to [his] case." Waiver, ECF No. 13-11; Notification of Right to Counsel, ECF No. 13-12. The form on which Clinton admitted to the violations informed him that:

> If the commissioner decides to revoke your release, the commissioner will decide how much, if any, credit to award you for the time between release and revocation. If you were released on mandatory supervision the commissioner may revoke any, all, or none of the diminution credits that contributed to your release on mandatory supervision.

Waiver 1.

On March 28, 2013, the Parole Commission issued a supplemental report to its original retake warrant, summarizing the outcomes of Clinton's criminal proceedings in Prince George's and Montgomery Counties (including the nolle pross disposition on the theft charges) and striking the Montgomery County theft charges from the statement of charges underlying the violation report. Supp. Rept. 1, 3. The supplemental report reiterated the charge that Clinton had violated his mandatory release conditions by failing to obey all laws and by possessing marijuana, but also added that Clinton had violated the condition that a supervised releasee "shall so conduct yourself as not to present a danger to yourself or others." *Id.* at 3. The basis for all three of these charges was the August 31, 2012 arrest for indecent exposure and marijuana possession, and the subsequent criminal proceedings. *Id.*

On March 29, 2013, Clinton appeared before Parole Commissioner Clay for his violation hearing. Continuance Order, ECF No. 13-14. Clay postponed the hearing, indicating that he

3

wanted to subpoena the arresting officer in order to conduct a mini-trial. *Id.*; Compl. 3. Later the same day, Clinton wrote a letter to Parole Commissioner Chairman Blumberg complaining about Clay's desire to conduct a mini-trial.[3] Ltr., ECF No. 13-15. In the letter, Clinton stated "I will postpone it [presumably referring to his violation hearing] again if I have to go in front of

---

[3] Clinton repeats on multiple occasions his belief that the mini-trial was illegal and that there was no need to conduct a mini-trial because of his nolo contendere plea. *See* Compl. 5; Ltr., ECF No. 13-15; Pl.'s Opp'n 5-8; *see also* Pl.'s Opp'n 7 (erroneously claiming that Defendants "admitted" in their Motion that the mini-trial was illegal; the portion of Defendants' Motion to which Clinton is referring is titled "Factual allegations in the Complaint" (Defs.' Mem. 3) and is clearly a summary of Clinton's allegations—it is *not* an affirmative agreement by Defendants that the mini-trial was illegal).

This argument appears to stem from Clinton's misunderstanding of the effect of a nolo contendere plea and the relationship between release revocation findings and criminal charges. A nolo contendere plea does not logically preclude the parole commissioner from making the factual finding that Clinton committed the criminal act. *See* Md. Code Ann., Crim. Proc. § 1-101(l) ("'Nolo contendere' means a plea stating that the defendant will not contest the charge but does not admit guilt or claim innocence."); *Meyer v. State*, 128 A.3d 147, 152 n.3 (Md. 2015) ("In effect, a *nolo contendere* plea is an implied confession of guilt, and is equivalent to a guilty plea for the purposes of the underlying criminal case.").

Relatedly, Clinton's letter indicates his mistaken belief that he only could be found guilty of a probation violation if he was found guilty of a new criminal offense, without recognizing that the terms of supervision that Clinton was charged with violating did not require commission of a new criminal act (e.g., the requirement that a parolee "shall so conduct yourself as not to present a danger to yourself or others" could be violated without a new criminal act). Moreover, Clinton appears to believe, erroneously, that the release violation charge of committing new criminal *activity* required a new criminal *conviction*, which is erroneous for two reasons. First, a prosecutor may elect not to prosecute a criminal charge that is supported by evidence for various reasons (e.g., the charge is minor and not a prudent use of the prosecutor's limited resources; the prosecutor agrees to drop the charges in exchange for defendant's cooperation in another criminal case, etc.). Thus, the absence of a criminal conviction is not dispositive of whether criminal conduct occurred. Second, because release violations need only be proven by a preponderance of the evidence, it is possible for one to be acquitted of a criminal charge under the beyond a reasonable doubt standard applicable to ordinary criminal proceedings and, even under the same evidence, still be found guilty by a preponderance of the evidence of violating the terms of supervised release by committing a new criminal offense. 90 Md. Op. Atty. Gen. 6, 2005 WL 34212 (Md. A.G. Jan. 3, 2005).

Additionally, Clinton says that Clay's decision to conduct a mini-trial on the allegations was based on the confusion over whether Clinton committed new criminal conduct. Pl.'s Opp'n 6-7. Clinton fails to acknowledge that he created that confusion by pleading guilty on March 18, 2013 to the charged violation of committing new criminal conduct, Waiver 1, but later tried to contest the charged violation at the March 29, 2013 hearing.

Clay." *Id.* at 2.

Clinton's violation hearing was rescheduled for May 31, 2013. Pl.'s Opp'n 3. Clinton's public defender reportedly told him that this hearing would be conducted by someone other than Clay; however, this was incorrect, and Clinton apparently was dismayed at the fact that Clay was presiding over the hearing. *Id.* at 4; Compl. 3. Clinton requested that the hearing be rescheduled again so that he could retain a private attorney, and the request was granted. Inmate Postponement Request Record, ECF No. 13-18; Pl.'s Opp'n 4.

Clinton's violation hearing ultimately was held on August 19, 2013 by Commissioner Sullivan. Decision, ECF No. 13-37; *see also* Compl. 3. Sullivan concluded that Clinton violated the terms of his supervised release by using, possessing, or selling a controlled dangerous substance and by constituting a threat to himself. Decision. Sullivan did not make a finding as to the violation charge that Clinton committed new criminal conduct. *Id.* Sullivan revoked Clinton's supervised release and rescinded all of his diminution credits. *Id.* Sullivan allowed Clinton to retain his "street credit," or credit for the time between Clinton's June 12, 2012 release and his August 31, 2012 arrest in Prince George's County, Maryland. *Id.* Sullivan also noted that Clinton was entitled to credit for his detention in a non-DOC facility[4] between August 30, 2012 and March 5, 2013, the date he was taken into the DOC's custody. *Id.* Thus, with all of his diminution credits revoked but receiving credit against his original sentence for the full time period between his release from and return to DOC custody, December 31, 2015 served as both the mandatory release date and the maximum expiration date for Clinton's sentence.

In September 2014, Clinton filed a federal habeas corpus petition with this Court, raising

---

[4] Presumably, Clinton was being detained at a detention facility in Montgomery County, as he had pending charges there until the charges were nolle prossed on March 4, 2013.

various challenges to his revocation hearing. Pet., ECF No. 1 in *Clinton v. Blumberg*, PWG-14-3033. In the Response filed in that case, Blumberg noted that, because no transcript of the August 19, 2013 hearing had been requested within 60 days (under Maryland regulations) or 1 year (under informal Parole Commission policy) of the hearing, the tapes of the hearing had been destroyed. Resp. 7, ECF No. 6 in *Clinton*, PWG-14-3033; *see also* COMAR 12.08.01.22.F.6(b) ("If a request for a transcript has not been received within 60 days of the hearing, the Commission may destroy the recording.").

While the habeas corpus petition was pending, Clinton also pursued state avenues challenging the revocation hearing, which apparently required transcripts of the revocation hearing. *See* ECF Nos. 13-4, 13-5 in *Clinton*, PWG-14-3033. It appears that the Parole Commission was given notice on March 25, 2015 that Clinton had filed a Petition for Judicial Review. ECF No. 16-4. In his August 10, 2015 Motion to Dismiss the federal habeas petition as moot, Blumberg explained that:

> At the request of the Parole Commission, on May 21, 2015, the Circuit Court for Baltimore City remanded Clinton's case for a new revocation hearing, because the tape of his August 19, 2013 revocation hearing was no longer available, and it was therefore impossible for the Commission to prepare a full record for the circuit court's review.

Mot. 1 n.1, ECF No. 13-1 in *Clinton*, PWG-14-3033. Instead of conducting a new hearing on remand, a member of the parole commission recalled Clinton's retake warrant on June 16, 2015, and Clinton was released on June 23, 2015, and continued on mandatory supervision. ECF No. 13-32, Sentence Calculation Worksheet. Accordingly, on September 1, 2015, this Court dismissed Clinton's habeas corpus petition as moot. Order, ECF No. 16 in *Clinton*, PWG-14-3033. Clinton's term of mandatory supervision concluded on December 31, 2015. Hemler Aff. 4, ECF No. 13-33; Sentence Calculation Worksheet.

## CLAIMS PRESENTED

On July 24, 2017, the Court received Clinton's civil rights Complaint against Commissioners Clay and Blumberg.[5] ECF No. 1. Clinton claims that his civil rights were violated because he was not provided with a new mandatory release date, which he alleges is required following release revocation. *Id.* at 3-4. Clinton also claims that Defendant Blumberg ignored his repeated letters and emails that Defendant Clay was abusing his power, presumably by ordering the violation hearing to be continued in order to conduct an allegedly illegal mini-trial on the alleged violations of release.[6] *Id.* at 5. Next, Clinton argues that his rights were violated because tapes of the hearing were destroyed despite a pending appeal. *Id.* Finally, Clinton's Complaint briefly suggests that Defendant Clay's determination that it was necessary to hold a mini-trial was illegal, an argument that he expands on in his Response to Defendants' dispositive Motion. *Id.*; Pl.'s Opp'n 6-8.

In their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Defendants assert, among other grounds, that Clinton's Complaint must fail because Clinton

---

[5] Clinton does not specify whether he is suing Clay and Blumberg in their official or individual capacities. However, because Clinton only seeks monetary damages, Compl. 6, the Eleventh Amendment would plainly bar any claim against Defendants, state officials, in their official capacities. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-03 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1976). Accordingly, the Court assumes Clinton is suing Defendants in their individual capacities and, to the extent he intended to sue them in their official capacities, those claims are dismissed with prejudice. *See Pennhurst*, 465 U.S. at 100-03.

[6] Aside from the mini-trial and related delay, Clinton's allegations about Clay's alleged abuse of power are speculative and sometimes contradictory. For example, in Clinton's view, it was an abuse of power for Clay to try to conduct the hearing on May 31, 2013. Compl. 3; Pl.'s Opp'n 4 ("Mr. Clinton was put back in front of Jasper Clay. This is an abuse of power."). However, Clinton also views the fact that Sullivan—and not Clay— conducted the August 19, 2013 hearing as evidence of Clay's abuse of power. Pl.'s Opp'n 7 ("Mr. Jasper Clay abused his power by keeping a close attentive eye on Plaintiff[']s case, even setting his case up in front of Commission Sullivan's caseload." (capitalization altered)). Additionally, Clinton states, without further evidence or explanation, that the Parole Board "knew they owed [him] another mandatory release date. But Jasper Clay Parole examiner told them not to give it to [him]." Compl. 4.

filed this action after the expiration of the statute of limitations and because Clinton has failed to state a claim. Defs.' Mem. 11-16.

## LEGAL STANDARD

Defendants' dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56, and both parties submit exhibits in support of their positions. Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendants have filed and relied on declarations and exhibits attached to their dispositive motion, and Plaintiff, having responded with exhibits to support his Opposition, clearly is aware that the Court could treat Defendants' motion as one for summary judgment, Defendants' motion shall be treated as one for summary judgment.

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). Additionally, while this Court is required to liberally construe *pro se* documents, such as Plaintiff's, holding them to a less stringent standard than those drafted by attorneys, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to

allege facts that set forth a claim currently cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Rather, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## ANALYSIS

### Failure to State a Claim

As to Clinton's allegation that his rights were violated because the tapes of his hearing were destroyed, Clinton has failed to stated state a claim against Defendants Clay and Blumberg because he has not sufficiently articulated how either Defendant was personally connected to or responsible for this action. Clinton does not state Defendants Clay and Blumberg were responsible for maintaining the tapes or other hearing records, or that either Defendant was involved in the decision to destroy the tapes. Rather, Clinton alleges vaguely that "my transcripts of the hearing were destroyed" and that "the Parole Board knew my appeal was in and still destroyed the transcripts." Compl. 5; *see also* Pl.'s Opp'n 5 ("The Maryland Parole Commission . . . destroyed the transcripts.").

To the extent that Clinton seeks to assign responsibility to either Defendant based on his role as a Parole Commissioner, it is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be

supported with evidence:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (brackets omitted). Clinton has not suggested that these elements are satisfied as to Clay or Blumberg regarding the destruction of the tapes. Accordingly, Clinton has failed to state a claim based on the destruction of such materials. *See id.*

### Statute of Limitations

"Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In Maryland, the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code Ann., Cts. & Jud. Pro. § 5-101.

The question of when a cause of action has accrued under § 1983 is a federal question. *See Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.* Under the prison mailbox rule, an action under § 1983 is commenced for the purpose of meeting the statute of limitations when the complaint is delivered to prison staff for mailing and is no longer under the plaintiff's dominion and control. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir. 1991).

The three-year statute of limitations may be tolled for equitable reasons, but only in "those rare instances where, due to circumstances external to the party's own conduct, it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (citing *Harris v. Hutcherson*, 209 F.3d 325, 330 (4th Cir. 2000)). Equitable tolling is unavailable to a plaintiff who has not been diligent in protecting his or her rights; rather, the plaintiff must establish that he or she has been prevented from asserting those rights. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 555 (1974). Under Maryland law, the statute of limitations is strictly construed. "Absent legislative creation of an exception to the statute of limitations, [the Maryland Court of Appeals] will not allow any 'implied [or] equitable exception to be engrafted upon it.'" *Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 399 (Md. 1994) (quoting *Booth Glass Co. v. Huntingfield Corp.*, 500 A.2d 614, 645 (Md. 1985)).

Clinton's remaining claims—that Clay violated his rights by ordering a continuance and mini-trial, that Blumberg failed to intervene following Clinton's letters and emails complaining about Clay, and that he was not provided with a new mandatory release date—accrued no later than August 19, 2013. Specifically, Clinton was aware of the continuance and mini-trial order as of March 29, 2013, the date when the continuance order was signed and the date of Clinton's first letter to Blumberg complaining about Clay. Continuance Order, ECF No. 13-14; Ltr., ECF No. 13-15. As to the new mandatory release date, Clinton asserts that he was owed a new date upon completion of the revocation hearing process, and thus this claim began accruing on August 19, 2013, the date of the revocation hearing. Finally, as to the claim about Blumberg's lack of intervention, the date of accrual is less than precise, because this claim accrued when Clinton realized that Blumberg was not going to act on or respond to his letters. However, given

that Clinton's first letter to Blumberg was dated March 29, 2013, it should have been apparent to Clinton after a few weeks or months of non-response that Blumberg was not going to respond. Certainly, it would have been apparent that Blumberg was not going to intervene by August 19, 2013, the date of Clinton's hearing.

Clinton filed this action on July 17, 2017, more than three years after the accrual dates noted above and thus beyond the limitations period. Clinton's only argument against Defendants' statute of limitations defense is his unclear statement that, "Defendants also state that Plaintiff[']s statue [sic] of limitations were already up to state injury, July 2016. This is a state case not the Federal case and Mr[.] Clinton did undoubt[ed]ly rec[e]ive injury this case." Pl.'s Opp'n 8. It is possible that Clinton is trying to say that, as a state-created period, Maryland's three-year statute of limitations is only applicable in state cases and not applicable in federal cases. This argument is without merit because, as explained above, the length of the statute of limitations in a § 1983 action is dictated by state law. As Clinton filed this action beyond the three-year limitation period and has not provided a basis for tolling, the Court agrees with Defendants that these three claims are untimely and must be rejected.[7]

## CONCLUSION

Accordingly, Defendants' dispositive Motion, treated as a Motion for Summary Judgment, shall be granted. A separate order follows.

Date

Paul W. Grimm
United States District Judge

---

[7] Having determined that Clinton's claims are either time barred or fail to state a claim, the Court does not reach Defendants' immunity argument. Defs.' Mem. 11-12, 19-20.